IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN SMITH, | : CIVIL ACTION NO. 1:21-CV-1704 |
| Plaintiff | : |
| | : (Judge Conner) |
| v. | : |
| LT. JAMES HENDRICK, *et al.*, | : |
| Defendants | : |

## MEMORANDUM

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff, John Smith, who is incarcerated in the Waymart State Correctional Institution ("SCI-Waymart"), alleges that prison officials in SCI-Waymart violated his constitutional rights under the First and Eighth Amendments and committed assault under Pennsylvania law. The case is presently proceeding on Smith's amended complaint. Defendants have moved to dismiss. The motion will be granted in part and denied in part.

I. **Factual Background & Procedural History**

Smith initiated this case through the filing of a complaint on October 6, 2021. (Doc. 1). The complaint alleged several incidents of verbal harassment by defendants, the denial of a meal on one occasion, and several incidents in which defendants denied Smith utensils and forced him to eat his meals "like a dog." (Id.)

The court dismissed the complaint for failure to state a claim upon which relief could be granted on October 12, 2021, pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A. (Docs. 5-6). We concluded that the denial of a meal on one

occasion did not constitute an Eighth Amendment violation, that the alleged verbal threats and harassment did not violate the Eighth Amendment, and that Smith failed to allege which defendants were personally involved in forcing him to eat like a dog. (Id.) We dismissed the complaint but granted Smith leave to amend as to the claim that he was forced to eat like a dog. (Id.)

Plaintiff amended his complaint on December 22, 2021. (Doc. 15). According to the allegations in the amended complaint, Smith was transferred to SCI-Waymart's Restricted Housing Unit ("RHU") in December 2020. (Id. at 12). Upon his transfer to the RHU, a John Doe correctional officer allegedly verbally abused Smith by calling him a "dummie," a "fucking dog," a "retard," and a "dirty motherfucker." (Id.) The officer also allegedly told other inmates what medication Smith was taking, falsely told Smith that he was going to be transferred out of the RHU, made derogatory comments about Smith's hair, repeatedly "made karate yells" at Smith, and repeatedly said, "bow to your sensei." (Id. at 14-15). The officer allegedly verbally harassed Smith in both face-to-face interactions and via the prison's intercom system. (Id. at 16). During one incident, the officer allegedly asked Smith through the intercom system, "how many kids did you rape?" (Id.) The amended complaint alleges that there was no basis for the officer to ask Smith such a question as Smith allegedly never committed any acts of rape. (Id.) The officer also allegedly removed food from Smith's lunch trays, including "butter, sugar, bread, juice packets, and juice boxes." (Id.)

The amended complaint alleges that Smith reported the abuse by the John Doe officer to several officials from SCI-Waymart, the Pennsylvania Department of

Corrections ("DOC"), and the Pennsylvania government. (Id. at 18-19). On November 15, 2021, defendants Morcom and Hendrick allegedly came to Smith's cell and Hendricks told him, "if you don't stop making complaints I'm going to put someone in this cell who really hates pedophiles and we will see how you like life then." (Id. at 19). Morcom then allegedly called Smith a "dummie" for "spanking those kids" and "filing those complaints" and said, "we don't care what they do to you, dummie." (Id. at 21).

Sometime after the exchange with Hendrick and Morcom, Hendrick allegedly "filed a bogus misconduct" charge against Smith alleging that Smith threatened him with bodily injury and sexually harassed him. (Id. at 22). Smith alleges that the filing of this misconduct charge was "pure retaliation." (Id.) Hendrick also allegedly denied Smith access to television, a tablet, personal clothing, commissary food and items, and the ability to order from the extended commissary list while he was incarcerated in the RHU, despite the fact that Smith was supposed to have such privileges because he was in the RHU on the basis of a COVID-19 quarantine and not because of a misconduct conviction. (See id. at 22-23). Hendrick and Morcom allegedly knew about Smith's complaints about the John Doe officer at the time they took these actions because Smith repeatedly told them about the complaints. (Id. at 23).

In addition to the allegedly retaliatory actions by Hendrick and Morcom, unnamed prison officials purportedly did not allow Smith to attend the prison law library while he was in the RHU. (Id. at 26). Hendrick, Morcom, and John Doe also allegedly refused to provide Smith with spoons during meal times. (Id.)

3

On November 17, 2021, Smith filed a grievance alleging that another inmate had made "false punches" at him and stopped just short of his face. (Id. at 29). Hendrick was assigned to investigate the grievance. (Id.) Hendrick placed Smith in the RHU as part of his investigation. (Id. at 30). This was allegedly done in retaliation for Smith filing grievances, as there was allegedly no reason under DOC policy for Hendrick to place Smith in the RHU as part of the investigation. (Id.)

The complaint names as defendants Hendrick, Morcom, and two John Doe defendants and raises claims for violation of Smith's First Amendment right to freedom of speech, violation of his First Amendment right to petition the government for redress, retaliation in violation of the First Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and assault. (Id. at 2-3). Smith seeks declaratory, injunctive, and monetary relief. (Id. at 32). Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief may be granted on March 1, 2022. (Doc. 25.) Briefing on the motion to dismiss is complete and the motion is ripe for disposition. (Docs. 28, 34).[1]

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted.

---

[1] Plaintiff argues the motion should be deemed withdrawn pursuant to Local Rule 7.5 because defendants filed the motion on March 1, 2022 but did not file the supporting brief until March 17, 2022, sixteen days later. (Doc. 34 at 4-5). Plaintiff is correct that Local Rule 7.5 requires a supporting brief within fourteen days of the filing of a motion, but we will excuse the noncompliance with Local Rule 7.5 because it appears that plaintiff has not suffered prejudice from the late filing.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim

for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

Smith brings his constitutional claims under 42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Although Smith purportedly raises three distinct First Amendment claims for violation of his right to free speech, violation of his right to petition the government for redress, and retaliation, the amended complaint posits all three claims on defendants' alleged retaliation against him for the filing of grievances.

6

Accordingly, we will analyze the three purported claims collectively as stating a claim for retaliation.

A prima facie case for retaliation requires the following allegations: (1) plaintiff engaged in constitutionally protected conduct; (2) defendant took retaliatory action against plaintiff that was sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between plaintiff's protected conduct and defendant's retaliatory action. Javitz v. Cty. of Luzerne, 940 F.3d 858, 863 (3d Cir. 2019).

Smith alleges that he made numerous complaints about John Doe's verbal harassment to Hendrick, Morcom, and other SCI-Waymart officials and that Hendrick and Morcom took numerous retaliatory actions after learning about the complaints. The alleged retaliatory conduct included: threatening Smith with assault by another inmate, filing false misconduct charges against Smith, denying Smith several privileges while he was incarcerated in the RHU, denying Smith utensils during meals, and arbitrarily placing Smith in the RHU based on a pretext of conducting a misconduct investigation. (See Doc. 15 at 12-30). Smith alleges that Hendrick and Morcom were aware of his complaints and that they specifically told him one of the retaliatory actions—the threat of assault by another inmate—directly resulted therefrom. (See id. at 19). We find these allegations sufficient to allege that Smith engaged in protected conduct, that defendants took retaliatory action against him sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and that there was a causal connection between the protected

conduct and the alleged retaliatory actions.  Hence, we will deny the motion to dismiss with respect to Smith's First Amendment retaliation claim.

Turning to the Eighth Amendment claim, Smith's allegations of verbal harassment fail to state a claim for violation of the Eighth Amendment.  Harassing and threatening language by itself does not violate the Eighth Amendment.  See, eg., Sears v. McCoy, 815 F. App'x 668, 670 (3d Cir. 2020) (nonprecedential); Rieco v. Moran, 633 F. App'x 76, 79 (3d Cir. 2015) (nonprecedential).[2]  Smith's allegations that he was deprived items in his meals, television, a tablet, personal clothing, commissary food, and commissary items and that he was not given a spoon on several occasions also fail to state a claim for violation of the Eighth Amendment, as the alleged deprivations do not amount to deprivations of "the minimal civilized measure of life's necessities."  Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997) (quoting Young v. Quinlan, 960 F.2d 351, 359 (3d Cir. 1992)).

We find, however, that Smith states an Eighth Amendment claim for deliberate indifference to a substantial risk of harm.  (See Doc. 15 at 16).  Prison officials' deliberate indifference to a risk that an inmate will be assaulted by other inmates may constitute a violation of the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 828 (1994).  Smith's allegation that John Doe pointedly asked him, "how many kids did you rape" when other inmates could hear the question—via the prison's intercom system—is sufficient to state an Eighth Amendment deliberate

---

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

indifference claim upon which relief could be granted as such a statement could expose Smith to a substantial risk of assault by other inmates. The amended complaint does not allege that Smith was assaulted as a result of John Doe's statement, but prisoners are not required to wait to be physically assaulted before they may obtain relief for prison officials' deliberate indifference to the risk of assault. Id. at 845.

Finally, Smith fails to state an assault claim upon which relief may be granted. Under Pennsylvania law, assault is an act intended to cause another person reasonable apprehension of an imminent battery that succeeds in causing such apprehension. Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960). "Words in themselves, no matter how threatening, do not constitute an assault; the actor must be in a position to carry out the threat immediately, and he must take some affirmative action to do so." Id. There is no allegation in the amended complaint that defendants took an overt act to place Smith in apprehension of an imminent battery. Smith's assault claim is based on defendants' words alone, which is not sufficient to state a claim for assault. Id.

Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. We find that further leave to amend the dismissed claims would be futile. Smith has had multiple opportunities to state a claim upon which relief may be granted and has failed to do so with respect to the dismissed claims. We will accordingly dismiss these claims with prejudice.

**IV.     Conclusion**

We will grant in part and deny in part defendants' motion (Doc. 25) to dismiss and defendants will be required to answer plaintiff's complaint. We will additionally impose a case management schedule. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     November 10, 2022