IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN SMITH,                          :      CIVIL ACTION NO. 1:21-CV-1704
                                     :
                 Plaintiff           :      (Judge Conner)
                                     :
        v.                           :
                                     :
LT. JAMES HENDRICK, *et al.*,        :
                                     :
                 Defendants          :

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983.  Plaintiff, John Smith, alleges that defendants retaliated against him in violation of the First Amendment for filing grievances and complaints about the conditions of his confinement.  The parties have filed cross motions for summary judgment and Smith has additionally moved for leave to amend his complaint.  Defendants' motion for summary judgment will be granted, Smith's motion for summary judgment and motion for leave to amend will be deemed withdrawn, the John Doe defendants will be dismissed, and this case will be closed.

## I.    Procedural History

Smith initiated this case through the filing of a complaint on October 6, 2021. (Doc. 1).  The complaint alleged several incidents of verbal harassment by defendants, the denial of a meal on one occasion, and several incidents in which defendants denied Smith utensils and forced him to eat his meals "like a dog."  (Id.)

The court dismissed the complaint for failure to state a claim upon which relief could be granted on October 12, 2021.  (Docs. 5-6).  We concluded that the

denial of a meal on one occasion did not constitute an Eighth Amendment violation, that the alleged verbal threats and harassment did not violate the Eighth Amendment, and that Smith failed to allege which defendants were personally involved in forcing him to eat like a dog.  (Id.)  We dismissed the complaint but granted Smith leave to amend as to the claim that he was forced to eat like a dog.  (Id.)

Plaintiff amended his complaint on December 22, 2021.  (Doc. 15).  According to the allegations in the amended complaint,[1] Smith was transferred to SCI-Waymart's Restricted Housing Unit ("RHU") in December 2020.  (Id. at 12).  Upon his transfer to the RHU, a John Doe correctional officer allegedly verbally abused Smith by calling him a "dummie," a "fucking dog," a "retard," and a "dirty motherfucker."  (Id.)  The officer also allegedly told other inmates what medication Smith was taking, falsely told Smith that he was going to be transferred out of the RHU, made derogatory comments about Smith's hair, repeatedly "made karate yells" at Smith, and repeatedly said, "bow to your sensei."  (Id. at 14-15).  The officer allegedly verbally harassed Smith in both face-to-face interactions and via the prison's intercom system.  (Id. at 16).  During one incident, the officer allegedly asked Smith through the intercom system, "how many kids did you rape?"  (Id.)  The amended complaint alleges that there was no basis for the officer to ask Smith such a question as Smith allegedly never committed any acts of rape.  (Id.)  The

---

[1] Smith's allegations are provided solely to aid the reader's understanding of the nature of his claims.  Nothing in this section shall be construed as a finding that the allegations in the amended complaint are undisputed.

officer also allegedly removed food from Smith's lunch trays, including "butter, sugar, bread, juice packets, and juice boxes." (Id.)

The amended complaint alleges that Smith reported the abuse by John Doe to several officials from SCI-Waymart, the Pennsylvania Department of Corrections ("DOC"), and the Pennsylvania government. (Id. at 18-19). On January 15, 2021, defendants Morcom and Hendrick allegedly came to Smith's cell and Hendrick told him, "if you don't stop making complaints I'm going to put someone in this cell who really hates pedophiles and we will see how you like life then." (Id. at 19). Morcom then allegedly called Smith a "dummie" for "spanking those kids" and "filing those complaints" and said, "we don't care what they do to you, dummie." (Id. at 21).

Sometime after the exchange with Hendrick and Morcom, Hendrick allegedly "filed a bogus misconduct" charge against Smith alleging that Smith threatened him with bodily injury and sexually harassed him. (Id. at 22). Smith alleges that the filing of this misconduct charge was "pure retaliation." (Id.) Hendrick also allegedly denied Smith access to television, a tablet, personal clothing, commissary food and items, and the ability to order from the extended commissary list while he was incarcerated in the RHU, even though Smith was allegedly entitled to such privileges because he was in the RHU for a COVID-19 quarantine. (See id. at 22-23).

In addition to the allegedly retaliatory actions by Hendrick and Morcom, unnamed prison officials purportedly did not allow Smith to attend the prison law library while he was in the RHU. (Id. at 26). Hendrick, Morcom, and John Doe also allegedly refused to provide Smith with spoons during meal times. (Id.)

On November 17, 2021, Smith filed a grievance alleging that another inmate had made "false punches" at him and stopped just short of his face. (Id. at 29). Hendrick was assigned to investigate the grievance. (Id.) Hendrick purportedly placed Smith in the RHU as part of his investigation in retaliation for Smith filing a complaint against him. (Id. at 30).

The amended complaint names as defendants Hendrick, Morcom, and two John Doe defendants and raises claims for violation of Smith's First Amendment right to freedom of speech, violation of his First Amendment right to petition the government for redress, retaliation in violation of the First Amendment, cruel and unusual punishment in violation of the Eighth Amendment, and assault. (Id. at 2-3). Smith seeks declaratory, injunctive, and monetary relief. (Id. at 32). Defendants moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted on March 1, 2022. (Doc. 25).

We granted the motion to dismiss in part and denied it in part on November 10, 2022, allowing the case to proceed as to Smith's First Amendment retaliation claim against defendants Hendrick and Morcom and Smith's Eighth Amendment deliberate indifference claim against one of the John Doe defendants, but dismissing all other claims with prejudice. (Docs. 36-37). Hendrick and Morcom answered the amended complaint on December 30, 2022. (Doc. 39).

Following the close of fact discovery, Smith moved for summary judgment and moved for leave to amend his complaint on January 23, 2024. (Docs. 73-74). Defendants Hendrick and Morcom moved for summary judgment on February 29, 2024. (Doc. 87). After being granted an extension of time, Hendrick and Morcom

filed a brief in support of the motion and a statement of material facts as required by Local Rule 56.1 on April 4, 2024. (Docs. 99-100).

Following the filing of the motions, the court extended the deadline for Smith to file briefs in support of his motion for summary judgment and motion for leave to amend five times—on January 31, 2024, February 23, 2024, April 5, 2024, April 25, 2024, and May 31, 2024—and extended the deadline for him to oppose defendants' motion for summary judgment twice—on April 25, 2024 and May 31, 2024. (See Docs. 83, 86, 101, 105, 107). Smith moved for another extension of these deadlines on July 22, 2024. (Doc. 108). The court granted the motion, concluding that Smith had shown good cause for an additional extension, but noting that no further extensions would be warranted because the court had already granted him an "extensive period" to file the requisite briefs. (Doc. 109). The court accordingly extended the deadlines for Smith to file briefs in support of his motion for summary judgment and motion for leave to amend and a brief in opposition to defendants' motion for summary judgment to August 31, 2024, and warned that no further extensions of the deadlines would be granted "absent extraordinary circumstances." (Id.) The court additionally cautioned that plaintiff's "finite amount of access to the prison law library or deadlines in plaintiff's other pending cases [would] not be considered extraordinary circumstances warranting an additional extension of time." (Id.)

On September 4, 2024, Smith filed a brief in opposition to defendants' motion for summary judgment and a statement of facts responding to defendants' statement of facts. (Docs. 112-13). Smith additionally requested an extension of

time to file briefs in support of his own motion for summary judgment and motion for leave to amend, in which he noted that he did not have sufficient library time to adequately research the briefs and that he ran out of money on his inmate trust account to print the necessary documents. (Doc. 115). Defendants then filed a motion for extension of time to file a reply brief in support of their motion for summary judgment on September 17, 2024. (Doc. 116).[2]

## II.    Smith's Motions Will Be Deemed Withdrawn

At the outset, the court will address Smith's motion for summary judgment and motion for leave to amend. Smith has not filed a brief in support of either motion. Although he has requested a seventh extension of time to file briefs in support of the motions, the court warned in granting his most recent motion for extension of time that an additional extension of time would only be granted based on "extraordinary circumstances." (Doc. 109). Smith's proffered reasons for an additional extension of time—the limited amount of law library access he has and the limited amount of funds on his inmate trust account to print documents—do not represent extraordinary circumstances that warrant an additional extension of time. Smith has been granted approximately seven months to file briefs in support of his motions, when such briefs are ordinarily required within two weeks of the motions. (See M.D. PA. L.R. 7.5). Given this extensive period that the court has granted him to file his briefs and the lack of extraordinary circumstances justifying

---

[2] Because the court concludes below that defendants are entitled to summary judgment without any need for defendants to file a reply brief, the court will deny defendants' motion for extension of time as moot.

an additional extension of time, the court will deny his motion for extension of time

to file supporting briefs.  Having done so, the court deems the motions withdrawn

for lack of supporting briefs in accordance with Local Rule 7.5.  (See id.)  The

court's analysis will proceed solely as to defendants' motion for summary

judgment.[3]

## III.   John Doe Defendants

As an additional preliminary matter, the court will *sua sponte* dismiss Smith's

claims against the two John Doe defendants because Smith did not identify them

prior to the discovery deadline.[4]  Claims against John or Jane Doe defendants are

properly dismissed when the defendants have not been identified prior to the

---

[3] Smith has made several other requests to amend his complaint at the
summary judgment stage.  (See, e.g., Doc. 112 at 6; Doc. 113 at 2-3, 9, 11).  To the
extent these requests are intended as separate requests for leave to amend
independent from his motion for leave to amend, they will be denied.  Smith does
not state what additional or different factual allegations he would include in an
amended complaint, nor does he attach a proposed amended complaint anywhere
in his summary judgment filings.  Absent this information, the court will not grant
an open-ended request for Smith to amend his complaint because doing so would
likely require the court to reopen discovery and potentially lead to many more
months or years of litigation.

[4] Smith asserts that the John Doe defendants were not identified because the
defendants "deliberately refused to cooperate with discovery."  (Doc. 112 at 1).  To
the extent this is intended as a request for additional discovery, it will be denied
because Smith has not explained why he did not previously obtain the relevant
information through discovery.  See Dinnerstein v. Burlington Cnty. Coll., 764 F.
App'x 214, 217 n.1 (3d Cir. 2019) (noting that party requesting additional discovery
in opposition to motion for summary judgment must "indicate to the district court
its need for discovery, what material facts it hopes to uncover and why it has not
previously discovered the information").  Based on the exhibit attached to Smith's
response, it appears that his argument is based on purported deficiencies in
defendants' November 21, 2023 response to Smith's discovery requests.  (See Doc.
114).  But it does not appear from the record of this case that Smith moved to
compel discovery at any point after receiving the allegedly deficient response.

discovery deadline.  See, e.g., Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (nonprecedential);[5] Ornstein v. Warden, 3:18-CV-2042, 2021 WL 4290180, at *3 n.35 (M.D. Pa. Sept. 21, 2021); King v. Mansfield Univ. of Pa., No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014).

## IV.   **Material Facts**[6]

Smith was housed in SCI-Waymart at all relevant times.  (Doc. 99 ¶ 1).  On December 20, 2020, he was transferred to the RHU for a COVID-19-related quarantine.  (Id. ¶ 3).  On January 5, 2021, defendant Hendrick charged Smith with misconduct for threatening an employee with harm, sexual harassment, and refusing to obey an order.  (Id. ¶ 11).  On January 7, 2021, Smith pleaded not guilty to the misconduct charge during a disciplinary hearing, but nonetheless apologized for his conduct.  (Id. ¶ 17).  The hearing examiner found Smith guilty of using abusive language and refusing to obey an order and sentenced him to 30 days of

---

[5] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

[6] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  Id.  Defendants have filed a statement of material facts as required by Rule 56.1.  (Doc. 99).  Smith has filed a document that purports to respond to defendants' statement, but instead of responding to the numbered paragraphs in defendants' statement, it simply gives Smith's own account of what facts are in dispute.  Because Smith's statement does not comply with Local Rule 56.1, the court deems the facts set out in defendants' statement admitted.  (See M.D. PA. L.R. 56.1).  The court will cite directly to defendants' statement of material facts where applicable.

disciplinary confinement effective January 5, 2021. (Id. ¶ 18). The hearing examiner dismissed the other charges. (Id. ¶ 19). Smith did not appeal the misconduct conviction. (Id. ¶ 20). On February 2, 2021, Smith's disciplinary custody ended, and he was returned to administrative custody for a COVID-19 quarantine. (Id. ¶ 21).

During Smith's incarceration in the RHU, an unidentified correctional officer purportedly verbally harassed Smith.[7] (Id. ¶ 4). Smith purportedly verbally reported this abuse to defendants Hendrick and Morcom on January 15, 2021. (Id. ¶ 6). Smith did not file any grievances during his time in the RHU in December 2020 or January 2021. (Id. ¶ 8). Smith remained in the RHU until he was returned to general population on March 5, 2021. (Doc. 99-1 at 3).

On November 17, 2021, Smith submitted a grievance asserting that another inmate threatened him, and he felt unsafe. (Id. ¶ 22). Defendant Hendrick responded to the grievance on November 19, 2021, and noted that Smith was being moved to administrative custody pending the investigation of the threat. (Id. ¶ 24). Correctional officer Leonard, who is not a defendant in this case, made the decision to transfer Smith to administrative custody. (Id. ¶ 26). Smith remained in administrative custody until December 15, 2021, when Hendrick recommended that he be transferred back to general population. (Id. ¶ 27). Smith did not appeal his placement on administrative custody. (Id. ¶ 28).

---

[7] This correctional officer is named as a John Doe defendant in this case and will be dismissed as explained above.

V.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

VI.    **Discussion**

Smith brings his federal constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United

States . . . by a person acting under color of state law." <u>Kneipp</u>, 95 F.3d at 1204 (quoting <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Smith's sole remaining Section 1983 claims assert that defendants Hendrick and Morcom retaliated against him in violation of the First Amendment. We liberally construe his amended complaint as alleging five retaliatory actions by Hendrick and Morcom: (1) Hendrick initiating allegedly false misconduct charges against him; (2) Hendrick and Morcom allegedly denying him certain privileges while he was confined in the RHU; (3) Hendrick and Morcom allegedly threatening him with violence by another inmate; (4) Hendrick and Morcom denying him spoons during meals while he was confined in the RHU; and (5) Smith being placed on administrative custody in November 2021. (<u>See</u> Doc. 15). The first four actions were purportedly done in retaliation for Smith complaining of the harassment by the John Doe correctional officer, while the fifth action was purportedly done in retaliation for Smith filing this case.

Claims that a defendant has retaliated against a plaintiff in violation of the First Amendment require proof that: (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003). Causation may be pleaded by alleging either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing. <u>Dondero v. Lower Milford Twp.</u>, 5

F.4th 355, 361-62 (3d Cir. 2021) (citing <u>Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007)).  Causation may also be implied by "the record as a whole."  <u>Id.</u> (citing <u>DeFlaminis</u>, 480 F.3d at 267).  Even if a plaintiff establishes a prima facie retaliation claim, defendant prison officials "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  <u>Rauser v. Horn</u>, 241 F.3d 330, 334 (3d Cir. 2001).

Defendants assert that they should be granted summary judgment on Smith's retaliation claims because Smith failed to exhaust administrative remedies and because he cannot establish the elements of his retaliation claims.  (Doc. 100). Smith argues that genuine issues of material fact preclude summary judgment on the issue of exhaustion and that he has otherwise produced sufficient evidence for his claims to survive summary judgment.[8]

Having reviewed the parties' summary judgment arguments and the evidence of record, we conclude that defendants are entitled to summary judgment. To the extent Smith's claims are based on allegations that defendants initiated misconduct charges against him, denied him privileges, denied him spoons, and

---

[8] Smith also argues that the motion for summary judgment should be denied for failure to comply with Local Rule 7.8 because defendants' supporting brief exceeds 15 pages in length.  (Doc. 113 at 4).  This argument is meritless.  Under Rule 7.8, a brief may exceed 15 pages in length "so long as it does not exceed 5,000 words" and "counsel, or an unrepresented party . . . include[s] a certificate (subject to Fed. R. Civ. P. 11) that the brief complies with the word-count limit."  M.D. Pa. L.R. 7.8(b)(2).  Defendants' brief complies with this rule.  Defendants' counsel has filed a certificate stating that the brief contains 4283 words.  (<u>See</u> Doc. 100 at 24).

placed him in administrative custody, his claims fail for lack of causation.[9]  First,

Smith alleges that Hendrick initiated misconduct charges against him in retaliation

for reporting the verbal harassment by John Doe, but Hendrick initiated the

misconduct charge on January 5, 2021, and Smith does not allege that he reported

John Doe's harassment to Hendrick until January 15, 2021.  (See Doc. 99 ¶¶ 11).

Smith's action of reporting harassment by John Doe to Hendrick on January 15,

2021 could not have been the cause of a misconduct charge that Hendrick initiated

ten days earlier.[10]  Second, Smith alleges that defendants denied him certain

privileges and spoons during mealtimes in retaliation for reporting John Doe's

harassment, but Smith asserts at the summary judgment stage that he was denied

privileges and spoons throughout his time in the RHU.  (See Doc. 113 at 13 ("[T]he

denial of eating utensils was not on a few occasions, it was every day Plaintiff was in

the R.H.U. even after DC time ended, restricted from commissary and tv, (not for a

few days but the entire time, (months). . . ."; Doc. 111 ¶ 26 ("Before and after dc

status Lt. Hendrick denied Plaintiff the privileges he was supposed to receive while

---

[9] The court decides these claims on the merits without addressing whether Smith exhausted administrative remedies.  Exhaustion of administrative remedies under the PLRA is "non-jurisdictional" in nature.  Rinaldi v. United States, 904 F.3d 257, 265 (2018).  When an exhaustion rule is non-jurisdictional, courts may grant summary judgment to a defendant on the merits of a plaintiff's claim without deciding whether the plaintiff has exhausted administrative remedies.  See Santos-Zacaria v. Garland, 598 U.S. 411, 416 (2023).

[10] Smith asserts that he reported John Doe's harassment to various prison officials throughout his time in the RHU, (see Doc. 113 at 11-12), but he has not produced any evidence to show that he reported the harassment to Hendrick and Morcom before January 15, 2021, or that they were otherwise aware of his complaints before that date.

in the R.H.U. for COVID quarantine.")).  Finally, Smith alleges that Hendrick placed him in administrative custody in November 2021 in retaliation for Smith filing this case, but because the court dismissed Smith's original complaint in this case pursuant to a screening review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A, (see Docs. 5-6), the court did not direct service of process on Hendrick until January 11, 2022, (see Doc. 15).  Smith has not produced any evidence to show that Hendrick was aware of this lawsuit prior to January 11, 2022.  Hence, Smith has failed to establish a causal connection between his filing of this lawsuit and his placement in administrative custody in November 2021.[11]

As for Smith's allegation that defendants retaliated against him by threatening him with harm by another inmate on January 15, 2021, defendants are entitled to summary judgment on this claim because Smith failed to exhaust administrative remedies.  Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court.  42

---

[11] Smith argues that the protected conduct that gave rise to this act of retaliation was his January 15, 2021, verbal complaint to Hendrick and Morcom, but the allegations in the amended complaint clearly indicate that the protected conduct at issue is the filing of this case.  (See Doc. 15 at 29-30 ("Lt. Hendrick was assigned to investigate he should have recused himself because of the civil suit and the abuse complaint I filed against him on the abuse hot line for threatening me . . . Lt. Hendrick had no reason to place me in the RHU for investigation.  He simply wanted to retaliate against me out of revenge.")).  To the extent that the January 15, 2021, verbal complaint can be considered the protected conduct that gives rise to the claim, the claim fails for lack of causation.  The ten-month gap between the protected conduct and the allegedly retaliatory action is too attenuated to presume causation, and plaintiff has not proffered any other evidence to show that Hendrick placed him the RHU in retaliation for his January 15, 2021, verbal complaint.

U.S.C. § 1997e(a).  The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated.  Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs.  Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available."  Rinaldi, 904 F.3d at 268 (citing Woodford, 548 U.S. at 93).  An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).  Once a defendant has established that the plaintiff failed to exhaust administrative remedies, the burden shifts to the plaintiff to show that the administrative process was unavailable to him.  Id. at 268.

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804.  (See Doc. 99-

10).[12]  Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen working days from the date of the incident.  Id. § 1(A)(8).  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  Id. § 1(A)(11).  If the inmate is unable to comply with the fifteen-day deadline, he may request an extension of time to file a grievance.  Id. § 1(C)(2).  Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days.  Id. § 2(A)(1)(a).  Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days.  Id. § 2(B)(1)(b).

Record evidence shows that Smith did not file any grievances regarding the January 15, 2021, incident, (see Doc. 99 ¶ 8), and Smith has not produced any grievances that he filed during this period to refute this conclusion.  The burden accordingly shifts to Smith to show that the grievance process was unavailable.

Smith offers two arguments to establish unavailability.  First, he asserts that the grievance process was unavailable because staff members did not provide him grievance forms during his time in the RHU.  (Doc. 113 at 5).  This argument is unavailing.  Record evidence shows that Smith was removed from the RHU and returned to general population on March 5, 2021, (see Doc. 99-1 at 3), and Smith has not produced any evidence to show that he requested an extension of time to file a

_____

[12] Doc. 99-10 is a copy of DC-ADM 804, which was attached as Exhibit J to defendants' motion for summary judgment.

grievance pursuant to Section 1(C)(2) of DC-ADM 804 after that date.  Our court of appeals has recently held that a failure to seek an extension of time in such a situation constitutes a failure to exhaust administrative remedies.  See Talley v. Clark, 111 F.4th 255, 263-64 (3d Cir. 2024).

The instant case is indistinguishable from Talley.  In Talley, the prisoner plaintiff was placed in a psychiatric observation cell from January 6, 2018, to February 8, 2018, following an attempted suicide.  Id. at 260.  During his time in the observation cell, the plaintiff was denied access to grievance forms or writing utensils.  Id.  The plaintiff argued that his lack of access to grievance forms and writing utensils rendered the grievance process unavailable, but our court of appeals rejected this argument, noting that DC-ADM 804 required him to seek an extension of time once he had been removed from the observation cell.  Id. at 263-64.  "Because a request to extend or be excused from the 15-day deadline for filing a grievance is explicitly included as part of the Pennsylvania DOC's grievance procedures, a prisoner must request permission to file an untimely grievance under § 1.C.2 just as he must pursue the grievance itself."  Id. at 263.  Thus, although it was true that "administrative remedies were temporarily 'unavailable' while Talley was on suicide watch without access to writing materials," the court continued, "that does not excuse his failure to request an extension once he was released and able to complete the necessary forms."  Id. at 264.

Here, like the plaintiff in Talley, Smith was purportedly denied access to grievance forms during the approximately three-month period that he was housed in the RHU, but he did not request an extension of time to file a grievance once he

was removed from the RHU.  Smith's failure to request an extension of time once the impediment to filing a grievance was removed constitutes a failure to exhaust administrative remedies.  See id. at 263-64.

Smith's second unavailability argument fails for similar reasons.  He argues that Hendrick rendered the grievance process unavailable by telling him "if you don't stop making complaints I'm going to put someone in this cell who really hates pedophiles and we will see how you like life then," (see Doc. 113 at 5, 9-10), but Smith states separately that Hendrick only had the ability to assign inmates to Smith's cell while he was in the RHU, see id. at 11 ("Defendant Hendrick[']s retaliatory timing and motive is that defendant Hendrick only has access to Plaintiff while Plaintiff is in the R.H.U. because defendant Hendrick is stationed in the R.H.U. as the R.H.U. Lt.")).  Smith does not provide any evidence that he filed a motion for extension of time to file a grievance once the impediment to filing a grievance was removed when he was transferred out of the RHU on March 5, 2021.  His failure to request an extension of time constitutes a failure to exhaust administrative remedies.  See Talley, 111 F.4th at 263-64.  Hence, because Smith failed to exhaust administrative remedies with respect to his claim arising from Hendrick and Morcom's actions on January 15, 2021, and he has failed to establish

that the grievance process was unavailable to him, the court will grant summary

judgment on this claim.[13]

**VII.   Conclusion**

  We will deny plaintiff's motion for extension of time to file briefs in support of

his motion for summary judgment and motion for leave to amend, deem those

motions withdrawn, grant defendants' motion for summary judgment, deny

defendants' motion for extension of time as moot, dismiss the John Doe defendants,

and close this case.  An appropriate order shall issue.

         /S/ CHRISTOPHER C. CONNER
         Christopher C. Conner
         United States District Judge
         Middle District of Pennsylvania

Dated: September 19, 2024

---

[13] Smith argues that the court and the defendants have overlooked the fact that his amended complaint also states an Eighth Amendment deliberate indifference claim arising from the events of January 15, 2021.  (Doc. 113 at 2).  Even assuming this is true, defendants would be entitled to summary judgment on this claim for failure to exhaust administrative remedies on the same basis as the First Amendment retaliation claim.