## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JOHN SMITH,                          :

               **Plaintiff**        :    **CIV. ACTION NO. 1:21-CV-1704**

          **v.**                :         **(JUDGE MANNION)**

JAMES HENDRICK, *et al.*,           :

          **Defendants**        :

## MEMORANDUM

This is a prisoner civil rights case in which plaintiff alleges retaliation and deliberate indifference. Summary judgment has been entered in defendants' favor. The case is before the court on plaintiff's motion to alter or amend judgment. For the reasons that follow, the motion will be denied.

## I.    BACKGROUND

This case was filed on October 6, 2021. (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner. On November 10, 2022,[1] Judge Conner granted in part and denied in part a

---

[1] The court provides an abbreviated procedural history solely to aid the reader's understanding of the current procedural posture of the case. Additional procedural history will be included below where necessary to understand plaintiff's arguments. A more complete procedural history and factual background can be found in Judge Conner's September 19, 2024, summary judgment opinion. (Doc. 117).

1

motion to dismiss, allowing the case to proceed solely as to plaintiff's First Amendment retaliation claim against defendants Hendrick and Morcom and his Eighth Amendment deliberate indifference claim against one John Doe defendant. (Docs. 36-37). Following the close of fact discovery the parties filed cross motions for summary judgment. Judge Conner granted defendants' motion on September 19, 2024, dismissed the John Doe defendants because plaintiff had not identified them prior to the discovery deadline, and closed the case. (Docs. 117-18).

Plaintiff filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59 on October 17, 2024, which the court received and docketed on October 22, 2024.[2] (Doc. 122). After Judge Conner granted multiple extensions of time, plaintiff filed a brief in support

---

[2] With respect to any documents filed by plaintiff that are cited in this order, the court will cite the document by the date that is listed on the court's ECF docket for ease of reference except where the prisoner mailbox rule would necessitate a different conclusion as to whether the document was timely filed or where the original filing date is otherwise relevant. *See, e.g.*, *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (noting that under prisoner mailbox rule documents filed by *pro se* incarcerated litigants are considered filed on the date they are submitted to prison officials for mailing). Where the prisoner mailbox rule would make an otherwise untimely document timely—as with the above cited document—the court will note the date that the document was submitted by plaintiff for mailing.

of the motion to alter or amend judgment on December 18, 2024. (Doc. 131). The motion is ripe for review.

## II.    DISCUSSION

Motions for reconsideration may be granted based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013). A "mere disagreement" with a court's legal conclusion is not a sufficient basis for reconsideration. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014). Plaintiff's motion and supporting brief present numerous arguments for reconsideration. The court considers them *seriatim*.

Plaintiff's first argument is that the court erred in denying his request to extend the discovery deadline. (Doc. 131 at 4).[3] This argument arises from a motion to compel discovery that plaintiff filed on December 18, 2023. (Doc. 62).[4] Judge Conner denied the motion to compel discovery as

---

[3] The court's pinpoint citations are based on the page numbers used on this court's electronic docket.

[4] Plaintiff has not provided any citations to the docket with respect to this argument, but the court has reviewed the docket to reconstruct the relevant procedural history to give a liberal construction to his arguments.

untimely on December 19, 2023, noting that the deadline to complete discovery had expired on November 30, 2023. (Doc. 64; *see also* Doc. 57 (setting November 30, 2023, discovery deadline)). Plaintiff filed a motion for reconsideration of this order on January 23, 2024, which additionally sought to reopen discovery. (Doc. 77). He then filed a brief in support of the motion for reconsideration on January 30, 2024. (Doc. 78).

Judge Conner denied the motion for reconsideration and to reopen discovery on March 22, 2024. (Doc. 95). Judge Conner noted that the motion was untimely to the extent it sought reconsideration of the previous order under Local Rule 7.10 because it was not filed within 14 days of the order. (*Id.*) Judge Conner additionally found that plaintiff had not shown good cause to reopen discovery because he had not identified any new discovery requests he wished to make if discovery was reopened. (*Id.*)

Plaintiff argues the court erred in denying his request to extend discovery because the court purportedly overlooked plaintiff's assertion that he mistakenly wrote the wrong discovery deadline in his notes for the case and that this error constituted excusable neglect. (Doc. 131 at 5-6).

---

Any errors the court has made in reconstructing the procedural history are due to plaintiff's failure to cite the relevant documents for the court's review.

This argument is meritless. Although plaintiff is correct that Judge Conner did not directly address whether plaintiff had established excusable neglect, plaintiff's assertion that he wrote down the incorrect date was inconsistent with other statements he made at the relevant time. Plaintiff first presented his "incorrect date" argument on January 30, 2024, where he stated that he "mistook 1/31/23 as the deadline for discovery."[5] (Doc. 78 ¶5). In the very next paragraph, however, plaintiff argues that the motion that the court construed as a motion to compel discovery—which was originally filed on December 12, 2023, and received by the court on December 18, 2023—was actually a motion for extension of the discovery deadline rather than a motion to compel discovery. (*Id.* ¶6). Plaintiff did not explain in his January 30, 2024, filing why he was requesting an extension of the discovery deadline on December 12, 2023, if he purportedly understood January 31, 2024 as the discovery deadline. If plaintiff actually believed that January 31, 2024 was the discovery deadline, there would have been no reason to move for an extension of the discovery deadline on December 12, 2023, which was approximately seven weeks before

---

[5] It appears that plaintiff meant to say "1/31/24," because a discovery deadline of "1/31/23" would have made all of his discovery requests around this time untimely by approximately one year. The court will overlook this typographical error in the original document.

January 31, 2024. Indeed, plaintiff's own course of conduct in this litigation shows that he generally moved to extend the discovery deadline approximately two weeks before the deadline. (*See* Docs. 50, 54, 57).

The most plausible explanation for this inconsistency is that the "wrong date" argument was offered as a post hoc rationalization for plaintiff's failure to timely move to compel discovery or move to extend discovery. Thus, the court concludes that even if the "wrong date" argument had been considered at the relevant time, it would not have established excusable neglect justifying an extension of the discovery deadline.

Plaintiff additionally argues that the court's refusal to consider excusable neglect was unfair and prejudicial to him because the court had previously accepted a brief that defendants had filed two days after the relevant deadline without considering whether defendants established excusable neglect. (Doc. 131 at 6 (citing Doc. 36 at 4 n.1)). This argument is meritless. Accepting a brief two days after the relevant deadline is categorically different than accepting motions to reopen discovery that have been filed weeks or months after the applicable deadline: the slight delay in the filing of the brief does not affect any party's ability to litigate the case or force a party to expend additional resources, whereas extending a

discovery deadline may potentially cause the parties to have to engage in months or years of additional discovery at significant cost.

Moreover, the docket of this case shows that Judge Conner granted plaintiff at least thirteen extensions of time throughout the case, with several deadlines being extended for months past the original deadline. (*See* Docs. 32, 52, 55, 57, 83, 86, 101, 103, 105, 107, 109, 124, 127). Thus, rather than showing unfairness towards plaintiff, the docket shows the court granting plaintiff extraordinary leniency to litigate this case as a *pro se* litigant that would likely not be granted to an attorney in a similar position.

Plaintiff's third argument is that the court erred in dismissing the John Doe defendants and erred in its explanation of why additional discovery was not warranted on this issue. (Doc. 131 at 5, 7). In the relevant portion of the court's opinion, Judge Conner considered plaintiff's statement that the John Doe defendants were not identified prior to the discovery deadline because defendants "deliberately refused to cooperate with discovery." (Doc. 117 at 7). Judge Conner noted that, to the extent this could be considered as a request for additional discovery, it would be denied because plaintiff had not adequately explained why he was unable to obtain the relevant information during the original discovery process. (*Id.*) Judge Conner noted that plaintiff had attached an exhibit that seemingly indicated

7

that the argument was based on deficient responses in defendants'
November 21, 2023, discovery response, but noted that plaintiff had not
filed a motion to compel after receiving the allegedly deficient response.
(*Id.*) Plaintiff states that this is "absurd" considering the motion to compel
discovery discussed above. (Doc. 131 at 7).

This argument is meritless. Although plaintiff is correct that the
September 19, 2024, opinion appears to overlook his December 18, 2023,
motion to compel discovery, (*see* Doc. 117 at 7 n.4), this oversight does
not present a sufficient basis to alter or amend the decision. As explained
above, the December 18, 2023, motion to compel discovery was untimely.
Additionally, nothing in the December 18, 2023, motion indicates that
plaintiff was seeking to compel discovery that would uncover the identity of
the John Doe defendants. (*See* Doc. 62). Thus, even if Judge Conner had
considered this motion to compel in his opinion, it still would not have
adequately explained plaintiff's failure to learn the identities of the John Doe
defendants during the normal discovery process.

Plaintiff's fourth argument is that the court erred by holding that
correctional officer Leonard was named as a John Doe defendant. (Doc.
131 at 5-7). This argument plainly misreads Judge Conner's opinion. In the
relevant portion of the opinion Judge Conner notes that "[d]uring Smith's

incarceration in the RHU, an unidentified correctional officer purportedly verbally harassed Smith." (Doc. 117 at 9). A footnote at the end of the sentence states that "[t]his correctional officer is named as a John Doe defendant in this case and will be dismissed as explained above." (*Id.* at 9 n.7). Later on the same page, in the only mention of Leonard in the opinion, Judge Conner states, "[c]orrectional officer Leonard, who is not a defendant in this case, made the decision to transfer Smith to administrative custody." (*Id.* at 9). Plaintiff's argument appears to construe footnote 7 as stating that Leonard is one of the John Doe defendants, but it is clear from the face of the opinion that the footnote refers to the John Doe correctional officer who allegedly verbally harassed plaintiff and not to Leonard.

Plaintiff's fifth argument is that the court erred in denying his requests to amend his complaint at the summary judgment stage based on his purported failure to indicate what information would be included in an amended complaint. (Doc. 131 at 8). Plaintiff argues that this holding is "absurd" because he "clearly requested leave to amend to litigate against C.O. Leonard." (*Id.*)

Plaintiff's argument is immaterial. In denying the request for leave to amend, Judge Conner relied not only on plaintiff's failure to indicate what information would be included in an amended complaint, but also on his

9

failure to attach a proposed amended complaint. (Doc. 117 at 7 n.3). Motions for leave to amend are properly denied based on a plaintiff's failure to attach a proposed amended complaint because without a proposed amended complaint the court "cannot evaluate the merits" of the plaintiff's motion. *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000). Thus, Judge Conner's decision to deny leave to amend was not in error regardless of whether plaintiff stated that he intended to add claims against Leonard because plaintiff's failure to file a proposed amended complaint was sufficient on its own to deny leave to amend.

Plaintiff's sixth argument is that the court erred in its dismissal of plaintiff's claims against the John Doe defendants because even if these claims were dismissed, his claims for supervisory liability against defendants Hendrick and Morcom based on the John Doe defendants' actions should have been allowed to proceed. (Doc. 131 at 8). This argument is meritless. In resolving defendants' motion to dismiss, Judge Conner dismissed all claims in the case except the retaliation claim against Hendrick and Morcom and the deliberate indifference claim against one John Doe defendant. Thus, there was no supervisory liability claim remaining at the summary judgment stage, and John Conner's failure to address such a claim was not error.

Plaintiff's seventh argument is that the court erred by deeming the facts contained in defendants' statement of material facts admitted at the summary judgment stage for plaintiff's failure to comply with Local Rule 56.1. (Doc. 131 at 5). This argument is unpersuasive. The United States Court of Appeals for the Third Circuit has held that deeming facts admitted for the non-movant's failure to comply with Local Rule 56.1 is permissible if the district court does not use the local rule to bypass the merits analysis required by Federal Rule of Civil Procedure 56. *Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 614 (3d Cir. 2018) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)). Here, Judge Conner performed a thorough review of the merits and did not rely on Rule 56.1 to bypass Federal Rule of Civil Procedure 56. Thus, the court's reliance on Rule 56.1 to deem facts admitted was not error.

Furthermore, plaintiff asserts that it is "beyond the scope of this brief to enumerate each and every fact plaintiff disputed," and instead provides only four examples of facts that he disputes, without any explanation as to how these factual disputes were genuine or material under Rule 56. (*See* Doc. 131 at 10-12). The court disagrees that it is "beyond the scope" of plaintiff's brief to argue what facts were in dispute and why these facts mattered to the court's analysis. To the contrary, this is *exactly* what plaintiff

11

must show for the court to reconsider the earlier ruling. It is not the court's job to take plaintiff's bare assertion that facts were in dispute and then figure out the relevance of those factual disputes. "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006); *accord United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).[6]

Plaintiff's eighth argument takes issue with several of the court's conclusions regarding the merits and scope of his claims. (Doc. 131 at 9). First, plaintiff argues the court erred by stating that his placement in administrative custody was allegedly done in retaliation for the filing of this case. (*See* Doc. 131 at 12; Doc. 117 at 11). Plaintiff states that in paragraph 34 of his amended complaint he "also stated it was retaliation for filing an abuse complaint on the abuse hot line." (Doc. 131 at 12). Plaintiff is

---

[6] Plaintiff also appears to argue that Judge Conner concluded that there were facts in dispute in footnote 1 of the opinion. (Doc. 131 at 10). This argument is frivolous. In the relevant portion of the opinion, Judge Conner provided a summary of the allegations in plaintiff's complaint and clarified in the footnote that "Smith's allegations are provided solely to aid the reader's understanding of the nature of his claims. Nothing in this section shall be construed as a finding that the allegations in the amended complaint are undisputed." (Doc. 117 at 2 n.1). Thus, rather than finding that facts were in disputes as plaintiff asserts, Judge Conner was merely clarifying that in citing the allegations in the complaint, he was not holding that plaintiff had established the allegations as facts. This footnote in Judge Conner's opinion is of no value in plaintiff's argument for reconsideration.

incorrect. Although paragraph 34 of the amended complaint notes that plaintiff filed an abuse complaint against Hendrick, it does not allege that there was a causal connection between this action and plaintiff subsequently being placed in administrative custody. (*See* Doc. 29 ¶34 ("Lt. Hendrick was assigned to investigate, he should have recused himself because of the civil suit and the abuse complaint I filed against him on the abuse hot line for threatening me.")).

Second, plaintiff takes issue with the court's conclusion that there was no causal connection between his reporting of verbal misconduct by John Doe and Hendrick initiating misconduct charges against him. (Doc. 131 at 12-13). In the relevant portion of the opinion, Judge Conner noted that Hendrick initiated the misconduct charge against plaintiff on January 5, 2021, but that the amended complaint did not allege that plaintiff reported John Doe's harassment to Hendrick until ten days later, on January 15, 2021. (Doc. 117 at 13). Thus, Judge Conner concluded that the report of harassment could not have been the cause of a misconduct citation issued ten days earlier. (*Id.*) Plaintiff argues that the court "has badly misunderstood the facts" and that contrary to Judge Conner's conclusion, he did report the abuse by John Doe prior to Hendrick initiating misconduct

charges. (Doc. 131 at 13-14). To support his argument, however, plaintiff only cites the allegations in his amended complaint. (*See id.*)

Plaintiff's argument misunderstands the burden on a nonmoving party at the summary judgment stage. To defeat a motion for summary judgment, a non-moving party cannot rely solely on the unsupported allegations in his complaint; he must produce evidence to support his claims. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Here, Judge Conner specifically noted plaintiff's assertion "that he reported John Doe's harassment to various prison officials throughout his time in the RHU," but held that he had not produced "any evidence to show that he reported the harassment to Hendrick and Morcom before January 15, 2021, or that they were otherwise aware of his complaints before that date." (Doc. 117 at 13 n.10). Thus, because plaintiff continues to rely on nothing other than his unsupported allegations and has not produced evidence that Hendrick and Morcom were aware of plaintiff's reports to prison officials before January 15, 2021, he has not shown that reconsideration is warranted.

Third, plaintiff asserts that the court erroneously summarized his amended complaint as alleging that he was denied the use of eating utensils on only one occasion and erroneously stated that plaintiff had

asserted for the first time during summary judgment proceedings that he was denied such privileges throughout his time in the RHU. (Doc. 131 at 14).

This argument misconstrues Judge Conner's opinion. Judge Conner did not state that the complaint alleged only one instance of denial of privileges or that plaintiff alleged more than one denial of privilege for the first time at summary judgment. Instead, Judge Conner emphasized plaintiff's acknowledgement at the summary judgment stage that "he was denied privileges and spoons throughout his time in the RHU" to show that plaintiff could not establish a causal connection between his reporting of John Doe's harassment and the alleged denial of spoons and other privileges. (*See* Doc. 117 at 13). In other words, plaintiff alleged that he was denied spoons and other privileges because he reported the harassment by John Doe while he was in the RHU, but Judge Conner concluded that this was not the case because the denial of spoons and other privileges had been going on the entire time that plaintiff was in the RHU, which would necessarily include time that he was in the RHU *before* he reported the harassment by John Doe.

Fourth, plaintiff argues the court erred by treating the acts of retaliation as "five different retaliatory actions" instead of "one continuous

and ongoing act" of retaliation. (Doc. 131 at 15). This argument is meritless. As Judge Conner explained, plaintiff could not show a causal connection between his protected conduct and four of the retaliatory acts. (*See* Doc. 117 at 12-14). Thus, there is no basis to conclude that all the acts should be treated as one continuous pattern of retaliation where there was no basis to conclude that four of the five acts were retaliatory in the first place.

Fifth, plaintiff argues that there is nothing in the record to establish that he complained about John Doe's misconduct to Hendrick on January 15, 2021, but that there is evidence to establish that he complained to other prison officials prior to that date. (Doc. 131 at 16). This argument does not help plaintiff. As noted above, he has not produced any evidence to show that Hendrick was aware of his complaints about John Doe prior to January 15, 2021. If plaintiff is correct that there is also no evidence that he reported the complaints to Hendrick on January 15, 2021, this would make his retaliation claims against Hendrick even weaker.

Sixth, plaintiff takes issue with the court's conclusion that there was a "10 month gap" between his alleged protected conduct and one of the allegedly retaliatory actions, and that this long gap was too attenuated to establish a causal connection. (Doc. 131 at 16). This is merely a

16

disagreement with the court's legal conclusion, which is not sufficient to obtain reconsideration. *Chesapeake Appalachia*, 73 F. Supp. 3d at 491.

Furthermore, this conclusion by Judge Conner was dicta. Judge Conner noted that one of the allegedly retaliatory actions was defendant Hendrick placing plaintiff in administrative custody in November 2021 because he had filed this case, but held that plaintiff could not establish a causal connection for this claim because there was no evidence that Hendrick knew about this lawsuit prior to January 11, 2022. (Doc. 117 at 14). Judge Conner's finding that the ten-month gap was too attenuated to establish a causal connection was in a footnote to address plaintiff's summary judgment argument that the protected activity giving rise to the claim was actually his January 15, 2021, verbal complaint to Hendrick and Morcom rather than the filing of his complaint. (*See id.* at 14 n.11). Judge Conner found that this argument was belied by the plain language of the amended complaint showing that the filing of the complaint was the relevant protected conduct, and simply stated that even if the verbal complaint could be considered the relevant protected conduct the ten-month temporal gap was too attenuated to establish a causal connection. Plaintiff's dispute with Judge Conner's dicta is not sufficient to obtain reconsideration.

Plaintiff's ninth argument is that the court erred in determining that plaintiff failed to exhaust administrative remedies because it failed to consider two arguments he made as to why the grievance process was unavailable to him. (Doc. 131 at 17). Specifically, plaintiff notes that he argued (1) that prison staff failed to follow internal DOC policies; and (2) that grievances are not required for urgent situations. (*Id.*) This argument is meritless. Plaintiff made these arguments in conclusory fashion at the summary judgment stage and did not offer any factual support for them. (*See* Doc. 113 at 5 ("The failure to follow policie[s] also renders the grievance process unavailable."); *id.* at 8 ("[U]rgent situations and emergencies are not grievable."). The court not discussing these undeveloped arguments in its opinion is not a basis for reconsideration.

Plaintiff's tenth argument is that the court erred by "creating a defense for the defendants for the first time" that defendants had not raised. (*See* Doc. 131 at 5, 17-18). This argument arises from his summary judgment argument that exhaustion was excused as unavailable because prison officials did not provide plaintiff grievance forms during his time in the RHU. (*See* Doc. 117 at 16). Judge Conner rejected this argument, noting that plaintiff was removed from the RHU on March 5, 2021, and holding that under *Talley v. Clark*, 111 F.4th 255, 263-64 (3d Cir. 2024), he was required

18

to request an extension of time to file a grievance at that point to succeed on his unavailability argument. (Doc. 117 at 16-18). Plaintiff asserts that he did seek an extension of time at the relevant time, but that he did not mention this in his summary judgment brief because defendants did not assert that he failed to request an extension. (Doc. 131 at 17-18).

This argument misunderstands the burden of proof applicable to exhaustion arguments. As Judge Conner explained in his summary judgment ruling, (*see* Doc. 117 at 15), although the initial burden to establish failure to exhaust administrative remedies rests with the defendants, once they have met that burden, the burden shifts to the plaintiff to show that the administrative process was unavailable to him. *Rinaldi v. United States*, 904 F.3d 257, 268 (2018). Thus, it was plaintiff's burden to come forward with proof that he moved for an extension of time to establish his unavailability argument; it was not defendants' burden to assert the absence of an extension request. The court accordingly did not err by denying plaintiff's unavailability argument based on the absence of an extension request without defendants first making that argument.

Plaintiff's eleventh argument is that the court erred by applying *Talley* retroactively because it was not decided until 2024, long after his attempts to exhaust administrative remedies. This argument is meritless. *Talley* was

based on the Third Circuit's interpretation of DC-ADM 804, the Pennsylvania Department of Corrections' grievance policy. *See Talley*, 111 F.4th at 265. Administrative rules and regulations like DC-ADM 804 are generally treated the same as statutes for purposes of statutory interpretation. *Kajmowicz v. Whitaker*, 42 F.4th 13, 149 n.8 (3d Cir. 2022) ("courts generally employ the same tools of 'statutory construction' when interpreting regulations." (quoting *Arcos Sanchez v. Att'y Gen. of U.S.*, 997 U.S. 113, 119-20 (2021))). And a "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312-13 (1994). Thus, *Talley's* ruling that DC-ADM 804 requires a prisoner to request an extension of time after the impediment to filing a grievance has been removed is an authoritative statement of what DC-ADM 804 meant at the time plaintiff attempted to exhaust administrative remedies. This argument for reconsideration fails.

Plaintiff's twelfth and final argument is that threats rendered the grievance process unavailable. (Doc. 131 at 19-20). Judge Conner considered this argument and found it unavailing. (*See* Doc. 117 at 18-19). Plaintiff's argument amounts to a simple disagreement with Judge Conner's

20

conclusion, which is not sufficient to reconsider the ruling. *Chesapeake Appalachia*, 73 F. Supp. 3d at 491.

## III.  CONCLUSION

For the foregoing reasons, plaintiff's motion to alter or amend judgment is denied. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATED:** 8/11/25

21-1704-01

21